# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

BRIAN GILLINGHAM,               :

      Petitioner,               :       Case No. 3:08cv00312

 vs.                                          :       District Judge Timothy S. Black
                                         Magistrate Judge Sharon L. Ovington

WARDEN, Pickaway Correctional       :
Institution,
                                    :

      Respondent.               :

                                    :

## REPORT AND RECOMMENDATIONS[1]

## I.   <u>Introduction</u>

      Petitioner Brian Gillingham is an inmate in state custody at the Pickaway Correctional

Institution in Pickaway County, Ohio.  He is serving an eleven-year sentence based on a state

trial judge's finding, at the conclusion of a non-jury trial, that Gillingham was guilty of

committing seven counts of pandering obscenity involving a minor, one count of possession

of criminal tools, and one count of gross sexual imposition.

      Gillingham filed an unsuccessful direct appeal of his convictions and sentence in the

Ohio Court of Appeals and in the Ohio Supreme Court.  Gillingham, through counsel, now

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

turns to this Court seeking a writ of habeas corpus under 28 U.S.C. §2254.  He contends that

his convictions and sentence violate his rights under various provisions of the United States

Constitution.  The case is before the Court upon Gillingham's Petition for Writ of Habeas

Corpus (Doc. #1), Respondent's Return of Writ (Doc. #7), Gillingham's Traverse (Doc. #8),

and the record as a whole.


## II.    **Background**

The Ohio Court of Appeals described the facts underlying Gillingham's convictions

as follows:

> The charges against Gillingham arose from computer images he transmitted to another man, David Schneider, containing pornographic depictions of young children.  Gillingham had told Schneider that he had a spanking fetish.  When Englewood police later searched Gillingham's home, they seized his computer, computer equipment, documents, and a videotape portraying Gillingham spanking a naked six year old boy.  The boy was at Gillingham's home when police arrived.
>
> Examination of Gillingham's computer revealed an empty file that formerly contained images Gillingham had sent to Schneider.  In addition, five images were found on the computer.  Douglas Arnold, an employee of the Miami Valley Regional Crime Lab, testified at trial that the images on Gillingham's computer and those he had transmitted to Schneider portrayed real children, not virtual or computer-created images of children.  However, in a trial to the bench, the court made its own findings, independent of Arnold's opinion, that the children portrayed were real children, not virtual images.

(Doc. #7 at Exhibit 37 at 485).

III.  **Standards of Review**

A.  **The AEDPA**[2]

United States District Courts have the authority to grant a writ of habeas corpus to a prisoner who is state custody "in violation of the Constitution . . . of the United States."  28 U.S.C. §2241(a), (c)(3).  "The writ of habeas corpus plays a vital role in protecting constitutional rights."  *Slack v. McDaniel*, 529 U.S. 473, 483, 120 S.Ct. 1595 (2000).

In the modern era (post-April 1996) of habeas corpus litigation, the Antiterrorism and Effective Death Penalty Act (AEDPA) limits the reach of the writ of habeas corpus "'with respect to claims adjudicated on the merits in state court.'"  *Coomer v. Yukins*, 533 F.3d 477, 484 (6th Cir. 2008)(quoting *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495 (2000)).  A writ of habeas corpus issues under the AEDPA "only if the state court's decision was (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) ... based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  *Washington v. Renico*, 455 F.3d 722, 728 (6th Cir. 2006) (quoting, in part, 28 U.S.C. §2254(d)).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law or if the state court decides a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts.  Conversely, [u]nder the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the

---

[2]  Codified in part in 28 U.S.C. §2254.  *See* Pub.L. No. 104-132, 110 Stat. 1214.

> correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  A state court need not cite Supreme Court cases on point or even be aware of such cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.

*Coomer*, 533 F.3d at 484 (quoting *Williams*, 529 U.S. at 412-13) (other citation and quotation marks omitted)(brackets in *Coomer*).

"'[A] federal habeas court may not issue a writ under the unreasonable application clause simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established Federal law erroneously or incorrectly.'" *Lovell v. Duffey*, 629 F.3d 587, 594 (6th Cir. 2011)(quoting *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005) (quoting *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843 (2002)). "Rather, the issue is whether the state court's application of clearly established federal law is 'objectively unreasonable.'" *Lovell*, 629 F.3d at 594 (quoting *Miller v. Francis*, 269 F.3d 609, 614 (6th Cir. 2001)(quoting *Williams*, 529 U.S. at 410, 120 S.Ct. 1495))(other citation omitted).

"[L]aw is 'clearly established' from 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Moore v. Haviland*, 531 F.3d 393, 401 (6th Cir. 2008)(quoting in part *Williams*, 529 U.S. at 412).  In the present case, the relevant state-court decision was the Ohio Court of Appeals' decision on Gillingham's direct appeal, *see* Doc. #7, Exh. 37, as this was "the last state court to adjudicate the claim[s] on the merits..." and the last Ohio court to produce "a reasoned opinion" addressing Gillingham's claims. *Pudelski v. Wilson*, 576 F.3d 595, 607 (6th Cir.

2009)(citation omitted).

**B.** <u>**Additional Standards**</u>

When the state court has not addressed or resolved federal constitutional claims its decision does not constitute an "adjudication on the merits" under §2254(d). "Thus, a federal habeas court reviews such unaddressed claims de novo." *Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005) (citing *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003) (distinguishing "no results" from no reasoning)). "Where, however, the state court disposes of a constitutional claim but fails to articulate its analysis, the rule is less clear." *Howard*, 405 F.3d at 467. In this situation, rather than conducting a de novo review of the state court's decision, the United States Court of Appeals has "taken an intermediate approach – in between de novo review and complete deference...." *Id*. Under the intermediate approach, "a federal habeas court must conduct an independent review of the record and applicable law to determine whether, under the AEDPA standard, the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. The independent review, however, is not a full, de novo review of the claims.... [T]he review remains deferential, because the court cannot grant relief unless the state court's result contradicts the strictures of AEDPA." *Howard*, 405 F.3d at 467-68 (citing *Harris v. Stovall,* 212 F.3d 940, 943 (6th Cir. 2000)) (other citation omitted).

## IV.    Ground One

### A.    Gillingham's Pandering Convictions and Main Contentions

Gillingham's seven convictions of pandering obscenity involving a minor arose under

Ohio Rev. Code §2907.321(A)(2) and (5).  (Doc. #7, Exh. 37 at 484).  This statute provides:

> (A)    No person, with knowledge of the character of the material or performance involved, shall do any of the following:
>
> * * *
>
> (2) Promote or advertise for sale or dissemination; sell, deliver, disseminate, display, exhibit, present, rent, or provide; or offer or agree to sell, deliver, disseminate, display, exhibit, present, rent, or provide, any obscene material that has a minor as one of its participants or portrayed observers...
>
> * * *
>
> (5) Buy, procure, possess, or control any obscene material, that has a minor as one of its participants...

Ohio Rev. Code §2907.321.

Gillingham argues that his pandering convictions violated the First, Sixth, and

Fourteenth Amendments to the Constitution.[3]  He contends:

> Petitioner was convicted of possession of virtual images.  Virtual images are an expression of free speech.  However, under Ohio law, §2907.321 the trier of fact is allowed non constitutional inferences which relieves the prosecution of its constitutional burden of proof as the statute is unconstitutionally vague and indefinite and does not require the prosecution to authenticate any digital images.

(Doc. #1 at 3).  Gillingham further contends that the Ohio Court of Appeals improperly

---

[3]  Gillingham's habeas petition relies on the Sixth and Fourteenth Amendments without mention of the First Amendment.  His traverse relies on the First Amendment.

6

attempted to distinguish *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002); *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607 (1973); and *Ferber v. New York*, 458 U.S. 747, 102 S.Ct. 3348 (1982). Consequently, according to Gillingham, "the application of Ohio Revised Code §2907.321 in this case violated petitioner's First Amendment rights pronounced by the United States Supreme Court." (Doc. #8 at 1860).

Gillingham also argues that his right to confront witnesses and right to due process under the Sixth and Fourteenth Amendment were violated because the prosecution presented computer images without any additional evidence concerning the ages of the individuals depicted. He maintains that without such evidence the trial judge made factual findings about the ages of the individuals depicted in the images without any supporting evidence, such as the testimony of a qualified physician.

Gillingham lastly contends that Ohio Rev. Code §2907.321 is "void for vagueness" and thus his convictions under the statute are unconstitutional.

### B. Discussion

### 1.

In *Ashcroft* the Supreme Court recognized, "the First Amendment bars the government from dictating what we see or read or speak or hear. The freedom of speech has its limits: it does not embrace certain categories of speech, including defamation, incitement, obscenity, and pornography produced with real children. While these categories may be prohibited without violating the First Amendment, none of them includes the speech prohibited by the CPPA." 535 U.S. at 245-46 (citation omitted). The Court noted that the

speech prohibited by the CPPA extended "to sexually explicit images that appear to depict minors but were produced without using any real children. The statute prohibits, in specific circumstances, possessing or distributing these images, which may be created by using adults who look like minors or by using computer imaging." 535 U.S. at 239. In this manner, the Supreme Court held, the statute was unconstitutionally overbroad by prohibiting speech protected by the First Amendment – namely, sexually explicit material containing "virtual" images, as opposed to actual images, of minors. *Id*. at 251-58.

When ruling on Gillingham's appeal, the Ohio Court of Appeals' decision was consistent with – not contrary to – the Supreme Court's holdings in *Ashcroft*, *Ferber*, and *Miller*. This is seen in the following discussion by the Ohio Court of Appeals of those Supreme Court cases:

> The Supreme Court explained in *Ashcroft*, as it had in *Ferber v. New York* (1982), 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 113, that because some images of minors engaged in sexual activity depict ideas that have been a theme of art and literature for centuries, the depictions prohibited by the CPPA, as a general classification, may be outside the definition of obscenity in *Miller v. California* (1973), 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed .2d 419; that the work, taken as a whole, appeals to the prurient interest, is patently offensive in the light of community standards, and lacks serious literary, artistic, political, or scientific value. *Id*. Not being necessarily obscene, materials prohibited by the CPPA could be subject to criminal sanctions only if shown to be intrinsically related to the sexual abuse of children in two further respects. *Ferber*. First, that as a permanent record of a child's abuse, continued circulation of the materials would harm the child involved. Second, because traffic in child pornography is an economic incentive for its production, that the state has an interest in closing the distribution network. *Id*.
>
> *Ashcroft* held that the possibly non-obscene materials to which the CPPA applied, to the extent that they included computer-generated "virtual"

images of minors engaged in sexual activity, could not be intrinsically related to sexual abuse of children under the *Ferber* tests for two reasons. First, because a virtual depiction does not involve an actual child in its production, virtual material of that kind "records no crime and creates no victims by it[s] production." *Id.*, at 236. Second, any causal link to harm suffered by real children in the production of virtual child pornography is contingent and indirect, because it does not necessarily follow from the speech involved but instead depends on some unquantifiable potential for subsequent criminal acts. *Id.*

(Doc. #7, Exh. 37 at 489-90). Because this discussion accurately reflects and discusses the law established in *Ashcroft* and *Ferber*, the Ohio Court of Appeals' decision was not contrary to clearly established federal law as determined by the Supreme Court. The issue, then, is whether the Ohio Court of Appeals' decision involved an unreasonable application of these Supreme Court cases. *See* 28 U.S.C. §2254(d)(1).

Gillingham argued in the Ohio Court of Appeals, as he does in the present habeas case, that Ohio Rev. Code §2907.321 contains the same First Amendment flaw identified in *Ashcroft*. This appears, according to *Gillingham*, because Ohio Rev. Code §2907.321(B)(3) allowed the trial court to infer that a person depicted in the images was a minor without requiring the prosecution to prove the image depicted an actual minor. Gillingham likewise contends that the trial record was devoid of evidence that the computer images he possessed depicted actual minors.

Ohio Rev. Code §2907.321(B)(3) creates the following permissive inference:

In a prosecution under this section, the trier of fact may infer that a person in the material or performance involved is a minor if the material or performance, through its title, text, visual representation, or otherwise, represents or depicts the person as a minor.

9

Addressing Gillingham's constitutional challenge to this statute, the Ohio Court of Appeals first noted:

> The trial court ... avoided the issue Defendant's motion presented by holding that it would not rely on R.C. 2907.321(B)(3), and would instead require the State to prove that the images in the materials underlying the pandering charges against Defendant portray _real_ children, not _virtual_ children. The court reasoned that the features of R.C. 2907.321(B)(3) that apply the prohibitions of R.C. 2907.321 to material that merely "represents or depicts the person as a minor" are similar to provisions applicable to virtual child pornography that were struck down as violations of the First Amendment in _Ashcroft v. Free Speech Coalition_ (2002), 535 U.S. 234, 122 S.Ct. 1389, 159 L.Ed.2d 403.

(Doc. #7, Exh. 37 at 487) (emphasis in original).  A review of the trial judge's decision and verdict reveals that he expressly declined to draw the inference permitted by Ohio Rev. Code §2901.321(B)(3) and carefully distinguished between depictions of virtual minors versus actual minors.  The trial judge wrote:

> [I]n the case at bar, this Court will not return a conviction based upon an inference of 'virtual child pornography.'  This Court will examine the computerized images with the sole object of determining whether it can infer, beyond a reasonable doubt , that the persons depicted are **REAL** minors.  Stated differently, this Court will not convict the Defendant based upon an inference that the person 'appears to be' a minor; or that the image 'conveys the impression' the person is a minor.  Nor will this Court convict based upon an inference from a visual representation that merely represents or depicts the person **AS** a minor.  These inferences are prohibited by _Ashcroft v. Free Speech Coalition_.

(Doc. #7, Exh. 19 at 234-35)(emphasis in original).  The trial judge's discussion along with the Ohio Court of Appeals' decision show that the state courts carefully drew the distinction Gillingham advanced, and continues to advance in the present case, by requiring the computer images to depict actual minors instead of virtual minors.  This was an objectively

10

reasonable, indeed a correct, application of *Ashcroft*.  *See Ashcroft*, 535 U.S. at 231-38.

## 2.

The Ohio Court of Appeals continued its discussion and rejected Gillingham's contentions at length:

> Defendant-Appellant Gillingham argues that the considerations applied in *Ashcroft* likewise apply to the violations of R.C. 2907.321(A)(2) and (A)(5) of which he was convicted, because on their facts they may likewise involve virtual images of children.  In that connection, he points to R.C. 2907.321(B)(3), which by its terms permits an inference that virtual depictions portray real children.

> The trial court expressly rejected application of R.C. 2907.321(B)(3), holding that the section permits a restriction on speech prohibited by *Ashcroft*. Instead, the court relied on its own examination of the materials concerned and reached its conclusions exclusively from its own observations, also declining to rely on testimony the parties offered relevant to whether the images were real or virtual.

> The question whether images are virtual or real is for the trier of fact to determine.  *State v. Huffman*, 165 Ohio App.3d 518, 2006-Ohio-1106. When the trier of fact is capable of reviewing the evidence to determine whether the prosecution met its burden to show that the images depict real children, the state is not required to present any additional evidence or expert testimony to meet the burden of proof to show that the images downloaded on a computer depict real children.  *United States v. Slanina* (C.A.5, 2004), 359 F.3d 356; *United States v. Kimler* (C.A.10, 2003), 335 F.3d 1132.

> The trial court found, based on its own examination of the evidence, that the video materials which the State introduced to prove Gillingham's offenses depict real children, not virtual children.  Gillingham argues that, nevertheless, the court could not reasonably have found that the images depicted in the materials which are the subject of the charges against him are not virtual, but instead portray real children, because the difference between the two forms of image is so slight as to be indistinct to an untrained observer. However, *Ashcroft* did not establish a broad, categorical requirement that, absent direct evidence of identity, an expert must testify that the alleged unlawful image is that of a real child. *United States v. Farrelly* (C.A.6, 2004),

389 F.3d 649, 655. A defendant's claim that the images may have been virtual and not real is purely speculative, and the State is not then required to offer evidence to rebut it. *United States v. Vig* (C.A. 8, 1999), 167 F.3d 443.

The trial court made identical findings of fact in support of each of the seven violations of R.C. 2907.321 of which Gillingham was convicted. First, as to each, the court found that the particular exhibit the State offered to prove the violation depicts a real minor. That finding satisfies the requirement of R.C. 2907.321(A)(2) that the material "has a minor as one of its participants or portrayed observers" and the requirement of R.C. 2907.321(A)(5) that the material "has a minor as one of its participants." It also places no reliance on the inference that R.C. 2907.321(B)(3) permits.

Second, as to each of the particular exhibits on which the State relied to prove the seven violations, the trial court found that each exhibit, when considered as a whole and judged with reference to ordinary adults, has as its dominant appeal an appeal to the prurient interest. The court also found that the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest. And, finally, that when taken as a whole, the work lacks serious literary, artistic, political, or scientific value. Those findings satisfy the tests for obscenity in *Miller v. California*.

*Ashcroft* involved no such findings. It was instead brought as an attack on the constitutionality of the CPPA and its provisions, which did not involve an obscenity element, as R .C. 2907.312 expressly does. The further findings the court here made are significant because a finding that materials are obscene avoids any need to apply the alternative *Ferber* tests, which concern only materials that are not obscene, as well as Ashcroft's particular application of *Ferber* to virtual materials that were prohibited by the federal statute but were not necessarily obscene. Indeed, by its terms, R.C. 2907.321(A)(2) applies only to "obscene material." Therefore, *Ashcroft* has no application to the offenses with which Defendant-Appellant was charged and of which he was convicted, and the findings the trial court made are sufficient in law to support his convictions for violations of R.C. 2907.321(A)(2) and (A)(5).

(Doc. #7, Exh. 37 at 490-494). The Ohio Court of Appeals' explanation of Gillingham's

case and *Ashcroft* and *Ferber* did not involve an unreasonable application of Supreme Court

case law.  Contrary to Gillingham's assertions, *Ashcroft* did not impose an evidentiary requirement that the prosecution produce extrinsic evidence, other than the unlawful images themselves, to demonstrate that the pictures depict real children.  *See United States v. Irving,* 452 F.3d 110, 121-22 (2nd Cir. 2006); *see also United States v. Slanina,* 359 F.3d 356, 357 (5th Cir. 2004); *United States v. Farrelly,* 389 F.3d 649, 653-654 (6th Cir. 2004)[4]; *United States v. Kimler,* 335 F.3d 1132, 1142 (10th Cir. 2003); *United States v. Deaton*, 328 F.3d 454, 455 (8th Cir. 2003).  In *Kimler,* the Eighth Circuit Court of Appeals summarized the pertinent case law, concluding:

> *Free Speech Coalition*, did not establish a broad, categorical requirement that, in every case on the subject, absent direct evidence of identity, an expert must testify that the unlawful image is of a real child. Juries are still capable of distinguishing between real and virtual images; and admissibility remains within the province of the sound discretion of the trial judge.

335 F.3d at 1142.  Indeed, the United States Supreme Court expressed skepticism at the notion that virtual images are indistinguishable from real ones, reasoning:

> If virtual images were identical to illegal child pornography, the illegal images would be driven from the market by the indistinguishable substitutes. Few pornographers would risk prosecution by abusing real children if fictional, computerized images would suffice.

*Ashcroft*, 535 U.S. at 255.  Federal cases examining circumstances similar to Gillingham's have not required expert testimony or other extrinsic evidence to prove that an unlawful image is an actual child.  *See Irving*, 452 F.3d at 121-22; *see also Slanina*, 359 F.3d at 357;

---

[4] *abrogated on other grounds*, *United States v. Williams*, 411 F.3d 675, 677 n.1 (6th Cir. 2005).

*Farrelly,* 389 F.3d at 653-54; *Kimler,* 335 F.3d at 1142; *Deaton*, 328 F.3d at 455.  The prosecution may instead rely on the visual images themselves.  *E.g., Deaton*, 328 F.3d at 455.  And, contrary to Gillingham's position, the burden of proving that actual children were depicted in the images was not improperly shifted to him.  *See* Doc. #7, Exh. 19 at 236-39; *see also Irving,* 452 F.3d at 122; *see also Deaton*, 328 F.3d at 455.  The trial judge instead correctly required the prosecution to prove this and it did so by the introduction of the pictures themselves.  *Id.*  Both the trial judge, as factfinder, and "juries are capable of distinguishing between real and virtual images without expert assistance," *Farrelly*, 389 F.3d at 654, and that the images themselves are sufficient to prove that actual minors are depicted.  *See Steele v. Wolfe*, Case No. 1:06cv00702 (S.D. Ohio Dec. 19, 2007)(Black, M.J.) (Doc. #7 at 52-64) (and cases cited therein).

As the Ohio Court of Appeals determined, the *Ashcroft* decision is inapplicable because Gillingham's case involved obscene materials which are excluded from the First Amendment's protection regardless of whether a minor is involved.  *See Miller*, 413 U.S. at 23, 93 S.Ct. at 2615 ("This much has been categorically settled by the Court, that obscene material is unprotected by the First Amendment.").  Even assuming *Ashcroft* applied and required evidence that the images depicted an actual minor, that showing can be made by reference to the image without resort to expert testimony.  The trial judge evaluated each image and determined that a real minor was involved.  *See* Doc. #7, Exh. 19 at 236-39.

Accordingly, Gillingham has not demonstrated that the Ohio Court of Appeals' decision was contrary to, or involved an unreasonable application of, *Ashcroft* or other

14

United States Supreme Court case law.

**3.**

Gillingham contends that Ohio Rev. Code §2907.321 is "void for vagueness" because it fails to provide a person with ordinary intelligence fair notice that his contemplated conduct was forbidden by statute. This is seen, Gillingham asserts, in the dispute before trial, and still ongoing, over whether possession of the computers images by defense counsel would violate this statute.

Gillingham raised this contention on his direct appeal, *see* Doc. #7, Exh. 34 at 402-03, the Ohio Court of Appeals' decision did not specifically address it, *see* Doc. #7, Exh. 37 at 486-94. Present review of this argument is therefore de novo rather than deferential. *See Howard*, 405 F.3d at 467.

> As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of vagueness doctrine "is not actual notice, but the other principal element of the doctrine-the requirement that a legislature establish minimal guidelines to govern law enforcement."

*Kolender v. Lawson*, 461 U.S. 352, 357-58, 103 S.Ct. 1855, 1858 (1983) (citations omitted); *see Staley v. Jones*, 239 F.3d 769, 791 (6th Cir. 2001).

When considering a vagueness challenge to a criminal statute, and assuming the statute does not implicates constitutionally protected conduct, courts "should uphold the challenge only if the enactment is impermissibly vague in all of its applications." *Village*

15

*of Hoffman Estates v. Flipside, Hoffman Estates, Inc*.,  455 U.S. 489, 494-95, 102 S.Ct. 1186, 1191 (1982).

Ohio Rev. Code §2907.321(A)(5) states, "No person, with knowledge of the character of the material or performance involved, shall do any of the following: ...Buy, procure, possess, or control any obscene material, that has a minor as one of its participants..."  By forbidding the possession of any obscene material that has a minor as a participant, the statute does not implicate constitutionally protected activity. *See Miller*, 413 U.S. at 23, 93 S.Ct. at 2615.  Because Gillingham was convicted of conduct proscribed by §2907.321(a)(5), *see* Doc. #7, Exh. 37 at 484, this statute is not vague in all its applications.

Accordingly, Gillingham's void-for-vagueness challenge to Ohio Rev. Code §2907.321 lacks merit.

4.

In sum and for all the above reasons, Gillingham is not entitled to federal habeas relief under his first ground for relief.

## V.  <u>Ground Two</u>

### A.    <u>Non-Severance of Charges</u>

Gillingham asserts that he was denied a fair trial in violation of the Fourteenth Amendment because he "was tried jointly with other offenses charging possession of virtual images along with a count of gross sexual imposition which were totally unrelated...." (Doc. #1 at 4).  Gillingham's starting premises – that he was convicted of possessing virtual

16

images – lacks merit as explained above in section IV.  He was tried for pandering obscenity involving images of <u>actual</u> minors together with a charge of gross sexual imposition.

Gillingham argues that the trial judge was aware he wanted a jury trial on the gross sexual imposition charge but forced him to submit to a non-jury trial on all counts by refusing to sever the first indictment (charging gross sexual imposition) from the second indictment (charging pandering obscenity involving a minor and possession of criminal tools).  (Doc. #7, Exhs. 1, 2).  Gillingham asserts that his trial on all charges together prejudiced him because, under Ohio R. Evid. 404(B), the "evidence related to the minor counts would not have been admissible in a separate trial for the gross sexual imposition." (Doc. #8 at 1870-71).

The Ohio Court of Appeals recognized that the trial court denied Gillingham's motion to sever the gross sexual imposition charge from the other charges.  The Ohio Court of Appeals then discussed Ohio R. Crim. P. 13 and 14, concerning severance and joinder (Doc. #7, Exh. 37 at 494-95), and rejected Gillingham's arguments as follows:

> Proof of the GSI [gross sexual imposition] charge was in the form of a video depicting Gillingham spanking a naked child on the buttocks. Evidence of the pandering obscenity charges was likewise in video form, involving computer images of other young children who were victims of similar assaults but which did not depict Gillingham.  The criminal tools charge involved the computer in Gillingham's home on which those other images were transmitted.
>
> The GSI charge and the pandering obscenity and criminal tools charges against Gillingham could have been joined in a single indictment. Gillingham argues that he was prejudiced by their joinder for trial because the GSI charge requires proof of "sexual gratification" and the evidence of computer video depictions the State offered to prove the pandering obscenity charges

permitted the jury to consider "other acts" evidence prohibited by [Ohio] Evid. R. 404(B) if offered to prove sexual gratification. Gillingham points out that the State offered no other evidence that he possessed those computer images for purposes of sexual gratification.

In order to prove the GSI charge, the State was required to show that Gillingham had sexual contact with the six-year old boy he spanked. "Sexual contact" is defined by R.C. 2907.01(B) to include touching of another's buttock "for the purpose of sexually arousing or gratifying either person."

For purposes of the crime of rape, which requires proof of "sexual conduct", the definitions of sexual conduct in R.C. 2907.01(A) necessarily imply that the actor's motive is sexual gratification, and so no further proof of sexual gratification is required when sexual conduct is proved. *State v. Smith* (1992), 84 Ohio App.3d 647. However, sexual contact, as defined by R.C. 2907.01(B), does not necessarily imply that the actor's purpose was sexual gratification. In order to prove that motive, competent evidence of other acts, relevant to prove the accused's motive or purpose is admissible. Evid. R. 404(B); R.C. 2945.59.

While the video depicting Gillingham spanking a naked six year old boy would be considered by many to portray a perversion involving sexual gratification, the proposition is not necessarily self-evident. The boy had been put in Gillingham's care, and one might infer that he merely acted to discipline the boy for misconduct when he spanked him. However, the computer videos that Gillingham sent Schneider, showing naked children who suffered similar assaults, tend to portray an obsession in the nature of a sexual fetish, permitting a finding that Gillingham's motive when he spanked the boy was sexual gratification prohibited by R.C. 2907.05(A)(4). Therefore, because that evidence would have been admissible to prove the GSI charge, Gillingham was not prejudiced by joinder of the two indictments containing the GSI charge and the pandering obscenity and possession of criminal tools charge in a single trial. *Hamblin*.[5]

(Doc. #7, Exh. 37 at 494-97)(footnote added).

---

[5]  citing *State v. Hamblin*, 37 Ohio St.3d 153 (1988), *see* Doc. #7, Exh. 37 at 495.

**B.**     **Discussion**

*Davis v. Coyle*, 475 F.3d 761 (6th Cir. 2007) presented the identical severance issue (except for the particular crimes) that Gillingham raises in the instant case.  The petitioner in *Davis* – like Gillingham – argued that the trial court's decision to deny his motion to sever certain charges forced him to seek a non-jury trial.  *Id*. at 776.  Noting that the petitioner sought a writ of habeas corpus, the United States Court of Appeals for the Sixth Circuit instructed, "this argument can succeed only to the extent that the [trial] court's decision to deny severance was in error and also constituted a violation of due process."  *Id*. The Sixth Circuit further instructed, "in order to obtain federal habeas relief on this claim involving state law, Davis must show that misjoinder of the counts 'resulted in prejudice so great as to deny a defendant his ... right to a fair trial.'"  *Id.* at 777 (quoting in part *United States v. Lane*, 474 U.S. 438, 446 n.8, 106 S.Ct. 725 (1986)).

Gillingham has not shown that the trial judge or the Ohio Court of Appeals erred as a matter of state law by failing to sever the charges of pandering obscenity involving a minor from the charge of gross sexual imposition.  Instead, the Ohio Court of Appeals recognized that *State v. Hamblin* (the pertinent Ohio Supreme Court case) held:  "Where evidence of each of the joined offenses would be admissible at separate trials, severance is not required because prejudice due to cumulation of evidence of the inference of a criminal disposition is largely absent."  37 Ohio St.3d at 159.  Applying *Hamblin*, the Ohio Court of Appeals reasoned, "the computer videos that Gillingham sent Schneider, showing naked children who suffered similar assaults, tend to portray an obsession in the nature of a sexual

19

fetish, permitting a finding that Gillingham's motive when he spanked the boy was sexual gratification prohibited by [Ohio] R.C. 2907.05(A)(4)." *Supra*, p. 18.  This led the Ohio Court of Appeals to conclude, "because that evidence would have been admissible to prove the GSI charge, Gillingham was not prejudiced by joinder of the two indictments containing the GSI charge and the pandering obscenity and possession of criminal tools charge in a single trial...." *Supra*, p. 18.  For these reasons, and in light of *Hamblin*, 37 Ohio St.3d at 159, Gillingham has not demonstrated that an error of state law occurred when the trial judge declined to sever the charges Gillingham faced.

Not only has Gillingham failed to demonstrate an error of state law, he has not shown that the Ohio Court of Appeals' opinion concerning severance was contrary to, or involved an objectively unreasonable application of, a United States  Supreme Court decision.  *See* Doc. #8 at 1870-72.  The Ohio Court of Appeals' decision suffers from neither deficiency. On this point *Davis* is again instructive:

> Without question, a risk of undue prejudice exists whenever joinder of counts permits introduction of evidence of other crimes that would otherwise be inadmissible.  *See, e.g., Bean v. Calderon*, 163 F.3d 1073, 1084 (9th Cir. 1998).  By allowing joinder of offenses, the possibility exists that a jury may use the evidence of one of the charged crimes to infer a general criminal disposition by the defendant; the jury also may confuse or cumulate the evidence of the various crimes charges. *See Lucero v. Kerby*, 133 F.3d 1299, 1314 (10th Cir.1998).  The prejudice that Davis must demonstrate, however, in order to justify a grant of a writ of habeas corpus is actual prejudice, not merely the potential for prejudice.  *See Herring v. Meachum*, 11 F.3d 374, 377-78 (2nd Cir.1993).

*Davis*,  475 F.3d at 777.  By finding that at least some of the same evidence used to prove the pandering charge was admissible to prove the charge of gross sexual imposition, the

Ohio Court of Appeals, in effect, recognized that the denial of severance created no actual prejudice to Gillingham.  And, as a result – like in *Davis* — because the denial of Gillingham's motion for severance did not cause him actual prejudice and did not result in a denial of his due process right to a fair trial, "that ruling cannot be said to have rendered his waiver of a jury trial involuntary."  *Davis*, 475 F.3d at 778-79.

Gillingham points out that *State v. Curry*, 43 Ohio St.2d 66 (1975) limits the use of other acts evidence "due to its propensity."  (Doc. #8 at 1871).  He further mentions that Ohio Rev. Code §2907.05(D) specifically limits the admissibility of evidence regarding sexual activity.  These observations of state law do not by themselves support a claim cognizable in a federal habeas corpus action.  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475 (1991).  It is therefore "not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle*, 502 U.S. at 67-68.  "[E]rrors of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus.  Yet, errors of state law, including evidentiary rulings, which result in a denial of fundamental fairness will support relief in habeas corpus."  *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)(citations omitted).

In an apparent effort to establish a violation of his federal constitutional rights,

Gillingham cites five cases from various United States Courts of Appeals.[6] But those cases provide weak assistance to Gillingham because each case pre-dates the AEDPA and none constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1). Gillingham's cases thus fail to show that the Ohio Court of Appeals' decision was contrary to, or involved an unreasonable application of, such clearly established law. Indeed, each case Gillingham cites did not involve the admission of prior-act or propensity evidence in violation of the Due Process Clause and none of his cases resulted in the issuance of a writ of habeas corpus. *See* cases cited *supra* note 6. Lastly, in light of the above discussion regarding *Davis v. Coyle*, Gillingham's cases do not demonstrate that the admission of evidence at trial caused an error of constitutional magnitude or denied him a fundamentally fair trial.

Accordingly, ground two of Gillingham's petition provides no basis for granting him federal habeas relief.

## VI.    Ground Three

### A.    Gillingham's Reliance on *Brady v. Maryland*

Relying on *Brady v. Maryland*, 373 U.S. 83 (1963), Gillingham contends that the trial court violated his rights under the Sixth and Fourteenth Amendment by not requiring "the state to produce an exact copy of the computer memory and its internal components which

---

[6] Gillingham cites *Manning v. Rose*, 507 F.2d 889, 894 (6th Cir. 1974); *Cunha v. Brewer*, 511 F.2d 894, 900-09 (8th Cir. 1975); *Heads v. Beto*, 468 F.2d 240 (5th Cir. 1972); *United States ex rel. Carey v. Johnson*, 462 F.2d 592, 594 (3rd Cir. 1972); and *Atwell v. Arkansas*, 426 F.2d 912, 914-15 (8th Cir. 1979). (Doc. #8 at 1871).

the state claimed were found on petitioner's computer."  (Doc. #8 at 1872).  Although he

acknowledges that the trial judge provided him with limited access to the computer,

Gillingham maintains that he should have been allowed an opportunity to have unfettered,

confidential access to the computer and to its data as it existed in its raw form.  Gillingham

argues that he was not given the same access and opportunity the prosecution had to review

the computer data and his expert, located in Flushing, New York, was likewise never able

to view any of the computer components or raw data.

### B.    The Ohio Court of Appeals

When rejecting Gillingham's *Brady* claim the Ohio Court of Appeals explained that

the trial judge granted Gillingham's motion to compel discovery under Ohio Crim. R.

16(B)(1)(c) with the restriction that the computer equipment be retained at the Miami Valley

Regional Crime Lab where Gillingham "could have access to it."  (Doc. #7, Exh. 37 at 498-

99).   Recognizing that Gillingham sought the production of what he argued was

"exculpatory evidence..., which is 'necessarily *Brady* material...,'" *id*. at 499 (citation

omitted), the Ohio Court of Appeals rejected Gillingham's contentions as "wholly

conclusory and unsupported by any reference to the record portraying the prejudice he

alleges." *Id*. at 499.  The Court of Appeals noted one exception – Gillingham's contention

that the restriction to the Miami Valley Regional Crime Lab made it financially and

logistically impossible for his expert to travel to Dayton to examine the computer and data.

In the Ohio Court of Appeals' view, this exception did not help Gillingham because he had

not sought assistance from the trial judge on this problem "and complained only after four months had passed since the court's order." *Id*. The Ohio Court of Appeals further reasoned, "The restrictions the court imposed were within the discretion conferred ... by Crim. R. 16(E). Absent some more particularized showing that the restrictions were not appropriate, we find no abuse of discretion." (Doc. #8 at 500).

The Ohio Court of Appeals' decision only touched on *Brady v. Maryland* without discussing its holding and without thoroughly articulating its thinking about Gillingham's *Brady* arguments. As a result, there is some question – which the parties have not addressed – whether the AEDPA's deferential standards apply to the Ohio Court of Appeals' decision or whether the "intermediate approach" applies or whether a de novo review is warranted *Supra*, §III. There is no need to resolve this question because Gillingham's *Brady* arguments lack merit under each standard of review.

### C. __Discussion__

Under *Brady*, "the suppression of evidence favorable to an accused upon request violates due process where the evidence is either material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87.

> To demonstrate a Brady violation, a habeas petitioner must establish three elements: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.' *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). A habeas petitioner demonstrates prejudice by showing that the suppressed evidence is 'material.' *Id*. at 282, 119 S.Ct. 1936.

*Brooks v. Tennessee*, 626 F.3d 878, 890 (6th Cir. 2010).

Gillingham has not shown either that he was deprived of his constitutional rights under *Brady* or that the Ohio Court of Appeals' decision was contrary to, or involved an unreasonable application of, *Brady*. Gillingham first has failed to demonstrate that the prosecution suppressed the computer evidence at issue. It is instead undisputed that the trial judge ordered the computer evidence to remain at the Miami County Crime Lab. (Doc. #8 at 1874). *Brady* simply does not apply here because the prosecution made the computer evidence available to Gillingham's counsel at the crime lab. *Cf. Norris v. Schotten*, 146 F.3d 314, 334 (6th Cir. 1998)("'[i]n general, the principles announced in *Brady* do not apply to a tardy disclosure, but to a complete failure to disclose....'").

Gillingham argues that restricting his access to the computer evidence by making it available to him only at the crime lab "destroyed [his] opportunity to truly examine the critical evidence used against him." (Doc. #8 at 1874). He asserts that the prosecution could analyze and discover exactly what evidence (computer images, etc.) defense counsel was analyzing at the crime lab, and his "right to confidentiality in defending himself would have been compromised." *Id*. Although Gillingham advances this line of argument at length, including (but not limited to) a quote from his computer expert describing, in part, the need for confidential review of the computer evidence, *id*. at 1874-78, Gillingham's suppositions do not overcome the fact that the prosecution made the computer evidence available to him, and there is no allegation that defense counsel was restricted from viewing it at the crime lab. Assuming, as Gillingham proposes, that the prosecution could discern

25

which computer images or evidence defense counsel viewed or did not view, this does not tend to show that Gillingham was deprived of evidence favorable to his defense or that the absence of certain favorable evidence prevented him from presenting a complete defense or otherwise deprived him of a fair trial. Indeed, under *Brady*, "[e]vidence is deemed material 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.'" *Robinson v. Mills*, 592 F.3d 730, 735 (6th Cir. 2010)(quoting in part *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375 (1985)). Neither Gillingham's arguments nor his expert's affidavit demonstrate that the lack of unfettered access to any particular computer evidence undermines confidence in the trial judge's guilty verdicts. Gillingham also overlooks that he knew, at least presumably, about the computer images since they were on the computer the police removed from his home. There was consequently no surprise to him when the prosecution presented the images as evidence during trial. Additionally, Gillingham does not argue or demonstrate that the prosecution withheld any computer images, information, or evidence that would have bolstered his defense at trial. In light of these circumstances, Gillingham has not shown that there is a reasonable probability the absence of such computer images or evidence undermines confidence in his guilty verdicts.

Gillingham relies on two additional Supreme Court cases: *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528 (1984) and *United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982). Each case, however, is distinguished from Gillingham's. The Supreme Court in

*Trombetta* held that "the Due Process Clause of the Fourteenth Amendment does not require that law enforcement agencies preserve breath samples in order to introduce the results of breath-analysis tests at trial." 467 U.S. at 491. Because *Trombetta*'s holding deals with charges and evidence wholly different from those at issue in Gillingham's criminal case, *Trombetta* does not demonstrate a violation of his constitutional rights.

The Supreme Court in *Valenzuela-Bernal* found:

> [I]t is the responsibility of the Executive Branch faithfully to execute the immigration policy adopted by Congress justifies the prompt deportation of illegal-alien witnesses upon the Executive's good-faith determination that they possess no evidence favorable to the defendant in a criminal prosecution. The mere fact that the Government deports such witnesses is not sufficient to establish a violation of the Compulsory Process Clause of the Sixth Amendment or the Due Process Clause of the Fifth Amendment.

458 U.S. at 872-73, 102 S.Ct. at 3449. The pertinent facts in *Valenzuela-Bernal* – absence of illegal-alien witnesses with no favorable evidence to a criminal defendant – are dissimilar to the present case, where computer evidence was disclosed to Gillingham and his trial counsel. *Valenzuela-Bernal*, therefore, does not support Gillingham's attempt to show a violation of *Brady* or his federal constitutional rights.

Accordingly, considering Gillingham's *Brady* claim de novo or under the intermediate standard of review, *see supra*, §III(B), no violation of Gillingham's rights under *Brady* emerges. And, under the AEDPA's deferential standards, the Ohio Court of Appeals' decision was not contrary to *Brady* and did not apply *Brady* unreasonably. *Cf. Evans v. Mitchell*, 344 Fed.Appx. 234, 241 (6th Cir. 2009) (Ohio Court of Appeals reasonably determined that undisclosed information was available and "the essential facts

were known...” to the defendant at trial; consequently, no *Brady*/due process violation occurred).

## VII.  <u>Ground Four</u>

### A.  <u>Gillingham's Claim</u>

Gillingham argues that the trial court violated his right to due process under the Fourteenth Amendment by admitting evidence – under the guise of expert testimony – when certain witnesses were neither experts nor could qualify as experts.  Allowing these witnesses to testify usurped the factfinding function of the trial court, according to Gillingham.  The four witnesses Gillingham points to as not properly qualified to give expert testimony are Detective Michael Lang, Douglas Arnold, David Ausdenmore, and David Schneider were not properly qualified as expert witnesses.

As discussed previously, Gillingham may not rely solely on errors of state law, including state evidentiary errors, because such errors do not show a violation of the Constitution and are therefore not cognizable in federal habeas corpus.  *Supra*, §V(B); *see Walker*, 703 F.2d at 962.  The Supreme Court has repeatedly emphasized that “it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.”  *Estelle*, 502 U.S. at 67-68, 112 S.Ct. at 480.  Consideration of his claim concerning about these witnesses must focus on its constitutional dimensions, if any.

28

**B.**     <u>**Discussion**</u>

**1.**
<u>**Detective Lang**</u>

Englewood, Ohio Police Detective Michael Lang testified for the prosecution about the contents of the videotape showing Gillingham spanking a six-year-old boy.  Lang testified that he obtained the video at Gillingham's home and "re-transcribed" it.  (Doc. #7, Exh. 37 at 500).  Gillingham contends that Lang was improperly allowed to testify as an expert about his interpretation of the last statements on the video-tape.

The Ohio Court of Appeals explained that, over defense counsel's objection, Lang "testified that his interpretation of the last statement heard on the tape, which was a statement Gillingham made to the boy, was: '. . . you know what, you're going to go back home to your mom soon.  I know you want your mom back.  I wish I could take you today, but I can't.'" (Doc. #7, Exh. 37 at 500-01)(citation omitted).

When rejecting Gillingham's challenge to Lang's "expert" testimony, the Ohio Court of Appeals found that Lang did not present an expert opinion, and he consequently did not need to be qualified as an expert witness under Evid. R. 702.  The Ohio Court of Appeals reasoned that the question to Lang on re-direct "was asked and answered in the context of the authenticity and correctness of his re-interpretation of the tape he had found at Gillingham's home.  Lang's statement was admissible because it was relevant for that purpose."  (Doc. #7, Exh. 37 at 501).

Gillingham has not argued or demonstrated that the Ohio Court of Appeals' ruling

29

was contrary to, or involved an unreasonable application, of Supreme Court decisions.  *See* Doc. #8 at 1878-79.  He has also not argued or shown that the admission of Detective Lang's testimony about the last statements on the tape constituted an error of law so serious that it deprived him of a fundamentally fair trial.  *See id*.  Respondent, moreover, is correct that the possibility Lang's testimony rendered Gillingham's trial fundamentally unfair was reduced by the fact that the case was tried to the bench rather than to a jury.

## 2.
## <u>Douglas Arnold</u>

Douglas Arnold was an employee at the Miami Valley Regional Crime Lab.  In the Ohio Court of Appeals, Gillingham argued, "the trial court abused its discretion in permitting Douglas Arnold ... to testify that the computer images of children on which [Gillingham's] convictions for pandering obscenity are founded are of real children and not virtual children; that is, computer-generated images."  (Doc. #7, Exh. 37 at 501).

In the present case, Gillingham contends that Arnold was not qualified to testify as an expert in digital image analysis and that his "testimony amounted to no more than '**it is what it looks like**.'  Permitting his testimony allowed an unconstitutional option of convicting petitioner for possession of images claimed to contain minors.  His method was totally without peer review, or articles for known errors."  (Doc. #8 at 1879)(emphasis in original).  Gillingham emphasizes, "If [<u>Ashcroft v.] Free Speech Coalition</u> stands for anything it is that digital images which *only appear to contain* minors are constitutionally protected."  *Id*. at 1879-80 (bold and italics in original).

30

The Ohio Court of Appeals found Gillingham's contentions meritless because the trial judge stated that he relied on his own examination of the computer images, independent of Arnold's testimony, and this rendered Gillingham's challenge moot.  Gillingham has not shown that the trial judge erred by admitting Arnold's testimony.  *See* Doc. #8 at 1879.  He argues, "Permitting [Arnold's] testimony allowed an unconstitutional option of convicting petitioner for possession of images claimed to contain minors...."  *Id*.  This, however, was not what occurred because the trial judge did not rely on Arnold's testimony as an evidentiary basis for concluding that the computer images depicted actual children.  *See supra*, §IV.  Gillingham has likewise not argued or demonstrated that the Ohio Court of Appeals' ruling was contrary to, or involved an unreasonable application, of Supreme Court decisions.  *See*  Doc. #8 at 1879-80.

### 3.
### David Ausdenmore

Ausdenmore has been a police officer for the City of Cincinnati since 1981.  (Doc. #7 at Tr. 1281).  He was promoted to the position of "specialist" in 1991, and was later assigned to "the Electronic and Computer Investigation Section."  *Id*. at 1281-82.  During the trial court's *Daubert*[7] hearing, Ausdenmore noted, "Primarily I specialize in data recovery, computer forensics for lack of a better term."  *Id*. at 1282.  In the Ohio Court of Appeals, Gillingham contended, "Ausdenmore ... testified that differences in digital and actual images make them distinguishable..."  (Doc. #7, Exh. 37 at 502).

---

[7] *Daubert v. Merrell Dow Pharmaceuticals*, 516 U.S. 869, 116 S.Ct. 189 (1995).

In the present case, Gillingham maintains that the trial court erred by permitting Ausdenmore to base his "opinion an improvised '**to look-at-it method**.' There was nothing scientific about this and should not have been admitted." (Doc. #8 at 1880)(emphasis in original). Gillingham points out that Ausdenmore admitted that no studies had been published with regard to reviewing digital images to detect alterations. This witness provided critical testimony, *i.e.,* a supposed method which he said there was no method...." *Id.*

The Ohio Court of Appeals rejected Gillingham's contentions because the trial judge relied on his own judgment – not Ausdenmore's testimony – to conclude that the computer images were actual, not virtual, images of children. (Doc. #7, Exh. 37 at 502). Gillingham has not argued or shown that the Ohio Court of Appeals' ruling was contrary to, or involved an unreasonable application, of Supreme Court decisions. *See* Doc. #8 at 1880-81. He has likewise not shown that the admission of Ausdenmore's testimony constituted an error of constitutional magnitude or deprived him of a fundamentally unfair trial.

## 4.
## David Schneider

The Ohio Court of Appeals explained that Schneider testified about computer images Gillingham had sent him. (Doc. #7, Exh. 37 at 502).

Gillingham argues, "Schneider was permitted to testify about various technologies and how they work and why petitioner had used them. The inner workings of computer software and its common uses are beyond the ken of ordinary individuals. This required

expert testimony."  (Doc. #8 at 1881).

The Ohio Court of Appeals rejected these contentions because Gillingham failed to make "references of any kind to the record to support his contentions.  App. R. 16(A)(7). We are not required to search the record to find them."  (Doc. #7, Exh. 37 at 502). Regardless of that conclusion, Gillingham has not shown that the admission of Schneider's testimony deprived him of a fundamentally fair trial.  Additionally, in the Ohio Court of Appeals, Gillingham did not frame his contentions regarding Schneider's testimony as a violation of his federal constitutional rights and he did not support his contentions with references to state or federal cases involving federal constitutional claims.  *See* Doc. #7, Exh. 34 at 411-12, 416-17; Doc. 7, Exh. 36 at 460.  As a result, he failed to fairly present a federal constitutional claim to the Ohio Court of Appeals concerning Schneider's testimony.  *See Landrum v. Mitchell*, 625 F.3d 905, 918 (6th Cir. 2010)(and cases cited therein).  Consequently, and light of the authority discussed below, *infra*, §IX, Gillingham has waived a federal constitutional claim related to Schneider's testimony for purposes of federal habeas review.  *Landrum*, 625 F.3d at 918 ("When the petitioner has failed to present the grounds to the state courts and has exhausted his claims because no state remedy remains available, his grounds are procedurally defaulted.").

### C.    Conclusion

For all the above reasons, Gillingham in not entitled to habeas relief on his fourth claim.

33

## VIII.  Ground Five

### A.    Gillingham's Contentions

Citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984), Gillingham

contends that he was provided with ineffective assistance of counsel in violation of his

rights under the Sixth and Fourteenth Amendments.  (Doc. #8 at 1881-82).  In his Traverse,

he lists the following nine areas of trial counsel's purported unconstitutional deficiencies:

1.    Failure to call a number of witnesses.

2.    Urging material witnesses to assert their 5th Amendment privilege.

3.    Failure to call 15-year-old resident of petitioner's home name[d] ... [LS to testify] that he used all computers in petitioner's house and downloaded child pornography.

4.    Failure to call ... [LS's] mother, Melody Gillingham, who would have confirmed what ... [LS] did.

5.    Failure to call Amber who would have testified:
      a. she gave pre-approval to petitioner's disciplining on the alleged victim and
      b.  she disciplined the alleged victim in the same way at home; and
      c.  she and the alleged victim maintained their relationship with petitioner on this matter.

6.    Advised petitioner not to cooperate with the court psychologist or the person doing the presentence investigation resulting in numerous errors appearing in the PSI report.

7.    Failed to impeach the testimony of Schneider regarding knowing about past [sic].

8.    Failure to call a resident of petitioner's home whose name was Chris and offering conversations between others and someone claiming to be named Chris living there.

34

> 9.    Failure to call an expert witness in digital imaging who would have
> testified that petitioner ... could have determined whether the seized images
> were proscribed by the First Amendment in accordance with *[Ashcroft v.]*
> *Free Speech Coalition*.

(Doc. # 8 at 1881-82).  Gillingham argues that these were not mere tactical errors.

Gillingham advances two additional grounds in support of his IAC claim:  (1) counsel failed to object to Ausdenmore's testimony "that an image violated Ohio's statute because it was '**obvious**' by just looking at it and within the ability of the average juror and outside the scope of permissible testimony"; and (2) counsel did not fully understand the fundamental concepts of digital technologies, which were crucial to Gillingham's defense.   (Doc. #8 at 1882-83).

## B.    Discussion

### 1.

To establish constitutionally ineffective assistance of counsel (IAC), a criminal defendant must show that his trial counsel's acts, errors, or omissions fell below an objective standard of reasonableness.  *Strickland,* 466 U.S. at 687-88, 104 S.Ct. at 2064. This demanding standard requires the defendant to establish that (1) defense counsel provided deficient performance and (2) the deficient performance prejudiced the defense so as to render his trial fundamentally unfair and the result unreliable.  *Id*.

The first *Strickland* prong mandates a highly deferential review of trial counsel's performance.  *Id*. at 689, 104 S.Ct. at 2065.  "[A] court must engage in the strong presumption that counsel's conduct falls within the wide range of reasonable

35

professional assistance...." *Id.* When trial counsel's acts or omissions constituted trial strategy, his or her performance was not constitutionally deficient. *Id.*

The second *Strickland* prong requires that trial counsel's "errors were so serious as to deprive ... [him] of a fair trial, a trial whose result is reliable." *Broom v. Mitchell*, 441 F.3d 392, 408 (6th Cir. 2006) (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2052).

Because the AEDPA precludes a *de novo* review of constitutional claims, *see Price v. Vincent*, 538 U.S. 634, 639, 123 S.Ct. 1848, 1852 (2003), Gillingham carries a heavy burden. "The Supreme Court has made clear that post-AEDPA claims of ineffective assistance of counsel brought by habeas petitioners will succeed only in very limited circumstances.... For [the petitioner] to succeed..., he must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance, because under §2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, he must show that the ... [state] Court of Appeals applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Payne v. Bell*, 418 F.3d 644, 665 (6th Cir. 2005).

## 2.

A review of the Ohio Court of Appeals' decision reveals that it accurately described *Strickland*'s standards. *See* Doc. #7, Exh. 37 at 506. Its decision is therefore not contrary to clearly established federal law.

Beginning with Gillingham's contention that his counsel provided ineffective

assistance by failing to object to Ausdenmore's testimony "that an image violated Ohio's statute because it was '**obvious**' by just looking at it," the Ohio Court of Appeals found this claim meritless.  The Ohio Court of Appeals reasoned that Gillingham had "failed to cite to the record where the testimony was found."  (Doc. #7, Exh. 37 at 507).  This was not an objectively unreasonable application of *Strickland* because *Strickland* placed the burden on Gillingham to "show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.  The Ohio Court of Appeals also recognized that the trial judge "avoided any prejudice to [Gillingham] by determining the issue itself."  (Doc. #7, Exh. 37 at 507).  This was consistent with *Strickland*'s prejudice prong because any alleged error by counsel in failing to object to Ausdenmore's testimony was negated by the trial judge's decision not to credit Ausdenmore and to instead examine the computer images to determine whether they depicted actual minors.  (Doc. #7, Exh. 19 at 234-47).  And both the trial judge's approach and the Ohio Court of Appeals' decision were consistent with *Irving*, 452 F.3d at 121-22; *Slanina*, 359 F.3d at 357; *Farrelly,* 389 F.3d at 653-54; *Kimler,* 335 F.3d at 1142; and *Deaton*, 328 F.3d at 455.

Next, the Ohio Court of Appeals rejected Gillingham's contention that defense counsel lacked a sufficient understanding of the fundamental concepts of digital imaging. The Ohio Court of Appeals again reasoned that Gillingham had failed to cite to the pertinent part of the record in support of this claim and likewise rejected his other

contentions as "too vague to overcome the presumption of competence that trial counsel enjoys." (Doc. #7, Exh. 37 at 507). These reasons, again, did not apply *Strickland* in an objectively unreasonable manner because *Strickland* placed the burden on Gillingham to show that defense counsel's "errors were so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, and because the Gillingham had the burden to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." *Id*. at 689, 104 S.Ct. at 2065.

Lastly, the Ohio Court of Appeals' rejection of Gillingham's lengthy list of the areas in which defense counsel was deficient did not involve an unreasonable application of *Strickland*. The Ohio Court of Appeals observed that Gillingham had not supported his assertions with reference to the record. (Doc. #7, Exh. 37 at 506-07). As with his other IAC arguments, this was consistent with the burden *Strickland* placed on Gillingham to establish deficient performance.

In addition, Gillingham does not frame any of his IAC argument under the applicable AEDPA standards. He does not argue that the Ohio Court of Appeals' decision was contrary to, or involved an unreasonable application of, *Strickland* or any other Supreme Court case. *See* Doc. #8 at 1881-83. He has therefore not satisfied his burden under the AEDPA. *See Payne*, 418 F.3d at 665. He also provides no analysis in support of his conclusion that defense counsel's nine problematic areas "were not merely tactical errors." *See id*.

Accordingly, Gillingham's fifth ground for relief does not establish a ground for federal habeas relief.

## IX.    Grounds Six, Eight, and Nine

### A.    Procedural Default

Respondent contends that Gillingham cannot obtain federal habeas review of his sixth, eighth, and ninth claims because he failed to raise these claims in the Ohio courts as required by Ohio's adequate and independent procedural rules.  Respondent further contends that Gillingham cannot show cause and prejudice for his procedural defaults or that a miscarriage of justice will ensue from barring federal habeas review of his sixth, eighth, and ninth claims.

To obtain federal habeas review, the record must show that Gillingham properly raised his federal constitutional claims in the Ohio courts pursuant to Ohio's adequate and independent procedural rules.  *See Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004); *see also Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing, in part, *Coleman v. Thompson*, 501 U.S. 722, 749, 111 S.Ct. 2546 (1991)); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  If Gillingham did not follow Ohio's adequate and independent rules of procedure and the Ohio courts enforced those rules against him, then his procedural default might result in a waiver of one or more of his claims for purposes of federal habeas review.  *See Bonilla*, 370 F.3d at 497; *see also Buell*, 274 F.3d at 349.

Four factors apply to determine whether habeas petitioner's failure to comply

39

with a particular state procedure rule bars federal habeas review:

1.  Whether there is a firmly established Ohio procedural rule with which the petitioner failed to comply;

2.  Whether the Ohio court actually enforced the rule in sanctioning the petitioner's failure to comply;

3.  Whether the petitioner's failure to comply with the state procedural rule constitutes an adequate and independent ground for barring federal habeas review; and

4.  Whether cause exists to dispense with the procedural rule and whether the petitioner was actually prejudiced by the alleged constitutional error or whether a failure to conduct habeas review of a claim will result in a miscarriage of justice.

*See Deitz v. Money*, 391 F.3d 804, 808-09 (6th Cir. 2004)(and cases cited therein).

### B.  **Discussion**

### 1.

Gillingham asserts in his sixth claim that the indictments failed to give him constitutionally adequate notice of the charges against him in violation of his rights under the Sixth and Fourteenth Amendments.  He reasons that "the prosecution failed to specify which material that he possessed or distributed was subject of the various counts of the indictments."  (Doc. #8 at 1883).

Respondent contends that the Ohio Court of Appeals rejected this claim by explicitly relying on Ohio's contemporaneous objection rule and that as a result, Gillingham's sixth claim is barred by his procedural default.

The Ohio Court of Appeals recognized that the prosecution "filed a bill of

40

particulars, which did not make reference to computer file names.  Gillingham filed no

additional request for a bill of particulars containing that information.  He filed two

motions to dismiss, but neither complained about the lack of any reference to computer

file names."  (Doc. #7, Exh. 37 at 509)(internal citation omitted).  The Ohio Court of

Appeals then rejected Gillingham's claim as follows:

> The matter of filenames relates to evidence the State might use to
> prove the pandering obscenity charges.  The lack of that information in the
> indictment did not impair the notice that Gillingham was due.  Any
> possible error was waived by Gillingham's failure to object in the trial
> court.  And, the trial court avoided the double jeopardy problem which
> Gillingham asserts by identifying the particular exhibit or exhibits on
> which his conviction on each count of pandering obscenity is founded.

*Id*. at 509-10.  Through this discussion the Ohio Court of Appeals actually enforced

Ohio's contemporaneous-objection rule to find Gillingham waived his challenge to the

indictment, thus satisfying the first and second procedural-default factors.  *See Deitz*, 391

F.3d at 808-09.  Respondent contends that it is well settled that Ohio's contemporaneous

objection rule constitutes an adequate and independent state procedural ground for

rejecting Gillingham's claim.  This contention is well taken.  "Ohio's contemporaneous

objection rule constitutes an adequate and independent state ground that bars federal

habeas review absent a showing of cause and prejudice."  *Hinkle v. Randle*, 271 F.3d

239, 244 (6th Cir. 2001)(citing *Scott v. Mitchell*, 209 F.3d 854, 867-68 (6th Cir. 2000)

(other citation omitted); *see Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *see also*

*Gonzales v. Wolfe*, 290 Fed.Appx. 799, 805 (6th Cir. 2008)("Under Ohio law, if an

appellant could have made an objection to a ruling at trial but failed to do so, the

41

appellant has waived appellate review of the challenge." (citing *State v. Murphy*, 91

Ohio St.3d 516, 747 N.E.2d 765, 788 (2001)); *Bennett v. Warden, Ross Correctional*

*Institution*, 2009 WL 88831 at *9 (S.D. Ohio Dec. 16, 2008) (Black, M.J.)("The Sixth

Circuit has consistently held that 'Ohio's contemporaneous objection rule constitutes an

adequate and independent state ground that bars federal habeas review absent a showing

of cause and prejudice.").

"In order to establish cause, a habeas corpus petitioner must show that 'some

objective factor external to the defense' prevented the petitioner's compliance with a

state procedural rule." *Bonilla*370 F.3d at 498 (quoting in part *Murray v. Carrier*, 477

U.S. 478, 494-95, 106 S.Ct. 2639 (1986)).  Gillingham has not argued that cause and

prejudice excuse his procedural default.  *See* Doc. #8 at 1883-85.  The record, moreover,

does not indicate some external factor precluded his defense counsel from challenging

the sufficiency of the indictment after the prosecution filed its bill of particulars.

Gillingham has also not demonstrated that a miscarriage of justice will result from

finding this claim procedurally defaulted.

Accordingly, Gillingham's procedural default constitutes a waiver of his sixth

claim for purposes of federal habeas review.

## 2.

Relying in part on *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531 (2004)

and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000), Gillingham contends

in his eighth claim that his sentence violates the Sixth and Fourteenth Amendments

because the trial judge sentences him based on facts he found that "were not alleged in the indictment nor proven at trial beyond a reasonable doubt."  (Doc. #1 at 4; *see* Doc. #7 at 1887-88).

Relying on *Fiore v. White*, 531 U.S. 225, 121 S.Ct. 712 (2001) and *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979), Gillingham contends in his ninth claim that he was denied due process of law in violation of the Fourteenth Amendment "when the court found [him] guilty of gross sexual imposition which was nothing more than spanking on the buttock of another person."  (Doc. #1 at 5; *see* Doc. #7 at 1888-89).

Respondent contends that these claims are procedurally defaulted because Gillingham failed to raise them in the Ohio Court of Appeals on his direct appeal and his later attempt to raise them in the Ohio Supreme Court did not cure his earlier procedural lapse.

Gillingham does not address Respondent's procedural default arguments concerning his eighth and ninth grounds for relief.  *See* Doc. #7 at 1888-89.  The briefs Gillingham filed in the Ohio Court of Appeals did not raise his eighth or ninth ground for relief during his direct appeal.  *See* Doc. #7, Exhs. 34, 37.  Although Gillingham asserted these claims in a memorandum in support of jurisdiction in the Ohio Supreme Court, *see* Doc. #7, Exh. 44, this did not cure his procedural misstep in failing to initially raise them in the Ohio Court of Appeals.  This was a procedural misstep because the "Ohio Supreme Court has stated that it will not consider constitutional claims not raised and preserved in the Ohio Court of Appeals."  *Leroy v. Marshall*, 757 F.2d 94, 99 (6th

Cir. 1985)(citing *State v. Phillips*, 27 Ohio St.2d 294 (1971))(other citation omitted).

"[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728 (1999). Gillingham did not do so and thus committed a procedural default by failing to raise his eighth and ninth claims on direct appeal in the Ohio Court of Appeals and by attempting, without success, to first raise these claims in the Ohio Supreme Court in his memorandum in support of jurisdiction. *See McMeans v. Brigano*, 228 F.3d 674, 681-82 (6th Cir. 2000); *see Leroy*, 757 F.2d at 99-100.

Gillingham has not argued that cause and prejudice excuse his procedural default. *See* Doc. #8 at 1887-89.  The record, moreover, does not indicate some external factor precluded him from raising his eighth and ninth claims in the Ohio Court of Appeals. Gillingham has also not demonstrated that a miscarriage of justice will result from finding these claims procedurally defaulted.

Accordingly, Gillingham's procedural default constitutes a waiver of his eight and ninth grounds for relief for purposes of federal habeas review.


**X**.    **Ground Seven**

Gillingham argues that he was denied due process in violation of the Fourteenth Amendment when the trial judge admitted unauthenticated digital images without proper foundation "and thus impinged on [his] First Amendment rights."  (Doc. #1 at 4).

Gillingham explains that the trial judge improperly admitted the digital images into evidence by misapplying the standard of "photographs speaking for themselves."  (Doc. #8 at 1885).  Gillingham maintains, "Authentication was not an issue in any of the cases cited by the [trial judge].  That determination must occur **prior** to admissibility."  *Id*. (emphasis in original).  He further contends that the prosecution failed to meet its burden to authentic the digital images.

The Ohio Court of Appeals addressed and rejected these contentions as follows:

> Gillingham argues that because the images the State offered to prove the pandering obscenity charges are digital images, the State had the burden to offer evidence authenticating them as images of actual children, not "virtual children."  There was much evidence offered concerning those differences during the trial.  The court ultimately resolved the matter based on its own perceptions, finding that the images are those of real children.  The court was entitled to do that, and in doing so it avoided the authentication issue pertaining to virtual images that Gillingham raised on appeal.

(Doc. #7, Exh. 37 at 510).  The Ohio Court of Appeals also relied on its prior analysis of Gillingham's First Amendment claim, noting, "We have rejected that assertion based on the trial court's finding of obscenity, which avoids that problem found in *Ashcroft*.  The authentication issue was limited to Gillingham's connection to that evidence, and the State fully authenticated the evidence in that respect through the testimony of police witnesses and Schneider...."  *Id*. at 511.

The Ohio Court of Appeals' decision was consistent with post-*Ashcroft* case law holding that expert testimony is not required to prove that images contained actual minors instead of virtual minors.  *See Irving*, 452 F.3d at 121-22; *see also Slanina*, 359

45

F.3d at 357; *Farrelly,* 389 F.3d at 653-54; *Kimler,* 335 F.3d at 1142; *Deaton*, 328 F.3d at

455.  Gillingham, moreover, has not pointed to a Supreme Court case holding otherwise

or to any case at all in support of his seventh claim.  (Doc. #8 at 1885-87).  Gillingham

has therefore failed to demonstrate that the Ohio Court of Appeals' decision was

contrary to or involved an unreasonable application of Supreme Court cases.

Accordingly, Gillingham is not entitled to federal habeas relief on his seventh

ground for relief.

## XI.    Ground Ten

In several instances, the Ohio Court of Appeals recognized that Gillingham's

appellate counsel had failed to cite to parts of the records in support of his assertions.

Gillingham argues that such omissions by appellate counsel deprived him "of effective

assistance of appellate counsel."  (Doc. #8 at 1889)(citing *Penson v. Ohio*, 488 U.S. 75

(1988) and *Evitts v. Lucey*, 469 U.S. 387 (1985)).

> There is a right to effective assistance of counsel in connection with
> a defendant's first appeal of right.  *Evitts v. Lucey*, 469 U.S. 387, 396, 105
> S.Ct. 830, 83 L.Ed.2d 821 (1985).  It is not necessary for appellate counsel
> to raise every nonfrivolous claim on direct appeal.  *Jones v. Barnes*, 463
> U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *Coleman*, 268 F.3d at
> 430-31.[8]  In fact, the process of "'winnowing out weaker arguments on
> appeal'" is "the hallmark of effective appellate advocacy."  *Smith v.
> Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986)
> (quoting *Barnes*, 463 U.S. at 751-52, 103 S.Ct. 3308).  "Generally, only
> when ignored issues are clearly stronger than those presented, will the
> presumption of effective assistance of counsel be overcome."  *Gray v.

---

[8]  *Coleman v. Mitchell*, 268 F.3d 417, 430-31 (6th Cir. 2001).

46

*Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

*Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002)(footnote added).

Gillingham's contentions fail to show that his appellate counsel provided constitutionally deficient performance because a review of counsel's memoranda on Gillingham's appeal reveals the presence of well-written and skillfully argued contentions.  Appellate counsel's arguments demonstrate his thorough understanding of the case and the issues he presented on appeal.  Given the high quality of the arguments appellate counsel presented, his omission of certain citations to the record did not constitute deficient performance.  *See* Doc. #7, Exhs. 34, 36.

In addition, although the Ohio Court of Appeals recognized that Gillingham's appellate counsel had omitted, at certain places in his briefs, citations to the records, that Court did not rely on such omissions as the sole ground for rejecting appellate counsel's arguments.  *See* Doc. #7, Exh. 37 at 501-02.  In other words, Gillingham's contentions lacked merit without consideration of the omitted citations.  Consequently, appellate counsel's omissions caused no prejudice to Gillingham's appeal.

Accordingly, Gillingham is not entitled to habeas relief on his tenth claim.

## XII.  Certificate of Appealability

Before a petitioner may appeal a denial of his habeas petition, he must first obtain a certificate of appealability.  28 U.S.C. §2253(c)(1)(A).  To obtain a certificate of appealability when a habeas petition is denied on the merits, the petitioner must make a

substantial showing of the denial of a constitutional right.  *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595 (2000).  This is accomplished by showing that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack*, 529 U.S. at 484, 120 S.Ct. at 1604.  If the District Court dismisses the petition on procedural grounds without reaching the merits of the constitutional claims, the petitioner must show that jurists of reason would find it debatable whether the District Court is correct in its procedural ruling.  *Slack*, 529 U.S. at 484, 120 S.Ct. at 1604.

The conclusions reached in the instant case are not debatable by jurists of reason and do not otherwise present issues adequate to deserve encouragement to proceed further.  Consequently, a certificate of appealability should not issue in this case.

## IT IS THEREFORE RECOMMENDED THAT:

1. Brian Gillingham's Petition for Writ of Habeas Corpus (Doc. #1) be DENIED;

2. Gillingham be denied leave to appeal *in forma pauperis* pursuant to 28 U.S.C. §1915(a) and any requested certificate of appealability under 28 U.S.C. §2253(c); and,

3. The case be terminated on the docket of this Court.

March 23, 2011

    s/Sharon L. Ovington
Sharon L. Ovington
United States Magistrate Judge

48

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).